# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD J. BURKE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-cv-0076-MJR |
| ) | |
| THE LAKIN LAW FIRM, PC, and ) | |
| BRADLEY M. LAKIN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

### A. Introduction and Factual/Procedural Background

On January 29, 2007, Burke filed this action against Bradley Lakin and the Lakin Law Firm (LLF) alleging breach of contract, an action for an accounting, fraudulent misrepresentation, and tortious interference with a contract and/or business expectancy (Doc. 3). On March 30, 2007, LLF filed its answer and raised counterclaims alleging breach of contract, breach of fiduciary duty, and tortious interference with a contract and/or business expectancy (Doc. 44).

After the Court granted leave to do so, Burke filed his first amended complaint on July 30, 2007 (Doc. 66) renumbering Counts III and IV as Counts IV and V, clarifying facts common to all counts, clarifying facts relevant to certain counts, and adding an additional count as Count III under the Illinois Wage Payment and Collection Act. After the Court again granted leave to do so, Burke filed his second amended complaint on December 7, 2007 (Doc. 96) wherein he withdrew Count II, the action for accounting, renumbered Count III as Count II, and added an additional count for quantum meruit as Count III. LLF has not amended its counterclaims at any

-1-

time.

On May 7, 2007, Burke moved to dismiss LLF's counterclaims (Doc. 49). LLF filed a response on June 6, 2007 (Doc. 58), and Burke submitted his reply on June 18, 2007 (Doc. 59). Having fully reviewed these filings, the Court now **GRANTS IN PART AND DENIES IN PART** Burke's motion to dismiss (Doc. 49).

### B. Analysis

Dismissal is warranted under Rule 12(b)(6) if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 1965 (2007); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In making this assessment, the District Court accepts as true all well-pled factual allegations and draws all reasonable inferences in LLF's favor. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

1. LLF's Counterclaim for Breach of Contract

First, Burke moves this Court to dismiss LLF's counterclaim for breach of contract. Burke argues that LLF's counterclaim is deficient in that it fails to allege essential elements of a breach of contract claim. Specifically, he argues that LLF does not plead that it performed all required conditions under the contract or that Burke breached any term of the agreement. Burke also argues that LLF improperly relies on the covenant of good faith and fair dealing.

The notice pleading standard of **Federal Rule of Civil Procedure 8(a)(2)** provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This lenient pleading standard requires only that a pleading provide fair notice of the claim and the grounds upon which it rests. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). In *Bell Atlantic*, the Supreme Court further addressed the requirements of Rule 8,

explaining that:

> a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . .

***Bell Atlantic*, 127 S.Ct. at 1964 -65 (internal citations omitted).** Stated another way, the complaint or counterclaim should be dismissed if the "factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." ***Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007).** While a counterclaim need not include detailed facts, it must allege facts which set forth the essential elements of the claim. ***See Doherty v. City of Chicago*, 75 F.3d 318, 326 (7th Cir. 1996).**

The essential elements of a breach of contract claim under Illinois law are: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. ***Village of S. Elgin v. Waste Mgmt. of Ill.*, 810 N.E.2d 658, 669 (Ill.App.Ct. 2004).**

Here, LLF does not allege all of the essential elements of a breach of contract claim, such as that it performed all of the contract's required conditions. Additionally, LLF's counterclaim fails to set forth the specific terms of the contract that Burke allegedly breached. Though Federal Rule of Civil Procedure 10(c) provides that "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading," no such exhibit is attached to the counterclaim even though LLF refers to "Exhibit A" therein (See Doc. 44). LLF should have attached the exhibit to its counterclaim or else pled the terms of the contract.

With respect to the claim for breach of the duty of good faith, the parties argue as to whether Illinois law permits a cause of action for breach of the implied covenant of good faith and

fair dealing. The confusion of the parties on this issue appears to arise from a distinction between the doctrine's application in tort versus contract. It is clear that Illinois does not recognize a cause of action in tort for breach of the implied covenant of good faith, except in a narrow set of cases in the insurance context. **Voyles v. Sandia Mortgage Corp., 751 N.E.2d 1126, 1131 (Ill. 2001) (explaining the Court's decision in *Cramer v. Ins. Exchange Agency*, 675 N.E.2d 518 (Ill. 1996), which created an exception in circumstances where an insurer breaches its duty to settle a third-party action brought against the insured).** In essence, Illinois courts have determined that there is no need for an independent tort action for the breach of the duty of good faith because a party can typically recover under a contract theory. *See Bass v. SMG, Inc.,* **765 N.E.2d 1079, 1090 (Ill.App.Ct. 2002);** *Martin v. Federal Life Ins. Co.***, 440 N.E.2d 998, 1005-06 (Ill.App.Ct. 1982).**

Similarly, there is no separate cause of action in the area of contracts for breach of the implied duty of good faith and fair dealing. However, the doctrine may be implicated in a breach of contract claim under certain circumstances. The doctrine's application is thoroughly explained in *Perez v. Citicorp Mortg., Inc.***, 703 N.E.2d 518 (Ill.App.Ct. 1998).**

> Every contract, as a matter of law, includes a duty of good faith and fair dealing, absent an express disavowal by the parties.
> The obligation of good faith and fair dealing is a derivative principle of contract law and is essentially used as a construction aid in determining the intent of the parties where an instrument is susceptible of two conflicting constructions.
> These implied covenants are generally implicated where one party to a contract is given broad discretion in performance. "The doctrine of good faith then requires the party vested with contractual discretion to exercise that discretion reasonably and with proper motive, not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties."
> Notwithstanding these implied covenants, however, "[p]arties are entitled to enforce the terms of negotiated contracts to the letter without being mulcted for lack of good faith [. . .] Express covenants abrogate the operation of implied covenants so courts will not permit implied agreements to overrule or modify the express contract of the

parties."

***Perez***, **703 N.E.2d at 525 (quoting *Resolution Trust Corp. v. Holtzman*, 618 N.E.2d 418, 423-24 (Ill.App.Ct. 1993)) (citations omitted).** Thus, the covenant is only implicated if particular provisions in the contract are susceptible to conflicting interpretations.

LLF does not appear to plead breach of the implied covenant of good faith as a separate cause of action, but rather as a component of its breach of contract claim. However, the inclusion of a reference to the implied covenant of good faith at this time is unnecessary unless LLF intends to suggest that there is an ambiguity as to the meaning of the contract. This does not appear to be the case, as LLF's breach of contract claim appears to reference breaches of particular provisions. Unfortunately, the Court is unable to determine whether this is so, because the contract is not attached to LLF's counterclaim.

Accordingly, the Court **GRANTS** Burke's motion to dismiss LLF's breach of contract counterclaim **without prejudice and with leave to re-file**.

2. LLF's Counterclaim for Breach of Fiduciary Duty

Next, Burke moves this Court to dismiss LLF's counterclaim for breach of fiduciary duty. Burke argues that because he was not a partner at LLF, he owed no heightened fiduciary duty. Without a heightened fiduciary duty, he argues that LLF's allegation that he took steps to set up a competing law firm is insufficient to state a claim for breach of fiduciary duty.

In its counterclaim, LLF alleges far more than Burke suggests, including seven separate types of conduct by which Burke allegedly breached his fiduciary duties. The Court cannot dismiss LLF's claim for breach of fiduciary duty wholesale, because Burke has only attacked one of these instances of conduct in his motion for dismiss — the allegation that he began preparations to set up a competing firm. Contrary to Burke's argument, however, LLF also specifically alleges

that Burke "actively commenced competition with [LLF] while still employed by [LLF]." Doc. 44, p.11, ¶ 10(g). This allegation is sufficient to raise a claim for breach of fiduciary duty and LLF's counterclaim will not be dismissed.

With respect to the allegation that Burke took steps to set up a competing law firm, the parties argue about whether Burke, Supervising Attorney of the Class Action Department, had a heightened fiduciary duty. Though officers and directors may be held to a heightened fiduciary duty, *see Cooper Linse Hallman Capital Mgmt., Inc. v. Hallman*, **856 N.E.2d 585 (2006),** a determination of this issue is not necessary in order to resolve the motion at hand.

As a general matter, all employees owe fiduciary duties of loyalty to their employers "not to (1) actively exploit their positions within the corporation for their own personal benefits, or (2) hinder the ability of the corporation to conduct the business for which it was developed." *FoodComm Intern. v. Barry*, **328 F.3d 300, 303 (7th Cir. 2003).** While lawyers are not "necessarily bound by the same fiduciary constraints that apply to nonlawyer officers and directors," lawyers do owe fiduciary duties to their employers. *See Dowd & Dowd, Ltd. v. Gleason*, **693 N.E.2d 358, 364-65 (Ill. 1998) (hereinafter *Dowd I*).**

While a departing attorney may undertake arrangements to set up a competing firm, their fiduciary duties impose limitations on his or her conduct. *Id.* **at 366.** As the Illinois Supreme Court notes, it is often difficult to draw the line between permissible and impermissible conduct in such circumstances. *Id.* **at 364.** Consequently, whether a fiduciary duty has been violated depends on the particular facts involved in each case. *See id.* **365-67;** *Foodcomm Int'l v. Barry*, **328 F.3d 300, 304 (7th Cir. 2003);** *Everen Secs., Inc v. , A.G. Edwards & Sons, Inc.*, **719 N.E.2d 312, 318 (Ill.App.Ct. 1999).** Here, it is sufficient to note that under certain circumstances an attorney's conduct while preparing to start a competing firm may constitute a breach of fiduciary duty, even

where heightened duty is not implicated.

Given the Federal Rules of Civil Procedure's notice pleading standard, LLF's claim that Burke breached his fiduciary duty to the firm when he "planned and took steps to set up a competing law firm" cannot be dismissed. At this stage, LLF need only set forth "enough facts to state a claim to relief that is plausible on its face." ***Bell Atlantic*, 127 S. Ct. at 1965.** Accepting LLF's factual allegations as true and drawing all reasonable inferences in LLF's favor, the Court finds LLF's claim that Burke's conduct in setting up a competing law firm to be plausible on its face.

Accordingly, the Court **DENIES** Burke's motion to dismiss LLF's breach of fiduciary duty counterclaim.

3. LLF's Counterclaim for Tortious Interference

Finally, Burke moves this Court to dismiss LLF's counterclaim for tortious interference with a contract or business expectancy. Under Illinois law, the elements for a cause of action for tortious interference with a contract or business expectancy are: "(1) the existence of a valid business relationship or expectancy; (2) the defendants' knowledge of plaintiff's relationship or expectancy; (3) purposeful interference by the defendants that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship or termination of the relationship; and (4) damages to plaintiff resulting from such interference." ***Dowd & Dowd, Ltd. v. Gleason*, 816 N.E.2d 754, 767 (Ill.App.Ct. 2004) (hereinafter *Dowd II*).**

Burke argues that LLF has failed to adequately plead essential elements of the claim because LLF does not allege that particular clients or employees left the firm or breached any contract as a result of Burke's actions. Additionally, Burke argues that pre-departure solicitation of clients is a requisite for a tortious interference claim involving lawyers.

Burke is correct in noting that LLF only alleges that he solicited employees to leave the firm and solicited employees to convince LLF's clients to leave the firm. However, a claim of tortious interference requires more than mere solicitation. The wrongdoer's acts must actually result in a breach of contract, a termination of a business relationship, or otherwise "prevent the plaintiff's legitimate expectancy from ripening into a valid business relationship." ***Dowd II*, 816 N.E.2d at 767.** LLF fails to allege that Burke's attempts to lure employees and clients away were successful. Moreover, if Burke's alleged actions were unsuccessful, it is difficult to see how LLF can make a showing of damages under a theory of tortious interference.

Finally, the parties argue at length whether pre-departure solicitation of clients is a prerequisite in a tortious interference claim involving lawyers. Burke points to *Dowd I* and *Dowd II* for this proposition. ***See Dowd I*, 693 N.E.2d at 371; *Dowd II*, 816 N.E.2d at 769.** In *Dowd I* and *Dowd II*, the Illinois courts analyzed what efforts a departing attorney may properly take in soliciting the firm's clients. Nowhere does either decision indicate that pre-departure solicitation is required in a tortious interference claim. To be sure, pre-departure solicitation may be relevant to the question of whether actions taken by a departing attorney constitute impropriety or "purposeful interference," especially in the context of a breach of fiduciary duty. But to find that pre-departure solicitation is a prerequisite for a tortious interference claim in this context would mean that even the most extreme post-departure conduct by an attorney in soliciting his former employer's clients could not constitute "purposeful interference."

The Court declines Burke's invitation to extend *Dowd I* and *Dowd II* in this manner. To survive a motion to dismiss under Rule 12(b)(6), it is sufficient that LLF allege some improper conduct related to the tortious interference claim. While those allegations may include pre-departure solicitation of clients, the Court is not persuaded that post-departure misconduct by an attorney is

in all cases insufficient to sustain a claim for tortious interference in this context. Therefore, LLF need only allege that Burke engaged in some improper conduct in soliciting the firm's clients.

Because LLF failed to properly plead all essential elements, the Court **GRANTS** Burke's motion to dismiss the tortious interference counterclaim **without prejudice and with leave to re-file**.

### C. Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Burke's motion to dismiss (Doc. 49). The Court **DENIES** Burke's motion to dismiss LLF's breach of fiduciary duty counterclaim, **GRANTS** Burke's motion to dismiss LLF's breach of contract counterclaim, and **GRANTS** Burke's motion to dismiss LLF's tortious interference counterclaim. Additionally, the Court **DISMISSES** LLF's breach of contract and tortious interference counterclaims **without prejudice and with leave to re-file**.

Accordingly, the Court **DIRECTS** LLF to file its amended counterclaim by **January 18, 2008.** Additionally, the Court **DIRECTS** Burke to file a responsive pleading to LLF's amended counterclaim by **February 4, 2008.**

**IT IS SO ORDERED.**

**DATED this 3rd day of January 2008.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**